IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ERIC DEAMER, | CASE NO. 1:23-cv-2212 |
| Plaintiff, | |
| vs. | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

Plaintiff Eric Deamer filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to my jurisdiction in this case. Doc. 10. Following review, and for the reasons stated below, I affirm the Commissioner's decision.

**Procedural history**

In September 2021, Deamer filed an application for disability insurance benefits alleging a disability onset date of December 31, 2018,[1] and claiming he was disabled due to bipolar disorder. Tr. 183, 204. The Social Security Administration denied Deamer's application and his motion for

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

reconsideration. Tr. 86, 94. Deamer then requested a hearing before an Administrative Law Judge (ALJ). Tr. 106.

In September 2022, an ALJ held a hearing. Deamer and a vocational expert testified. Tr. 37–78. The next month, the ALJ issued a written decision finding that Deamer was not disabled. Tr. 17–28. The ALJ's decision became final on September 8, 2023, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Deamer filed this action on November 14, 2023. Doc. 1. He asserts the following assignments of error:

> 1. The ALJ failed to consider third-party statements, specifically Exhibit 12E, a written statement from Plaintiff's wife.
>
> 2. The ALJ improperly disregarded and mischaracterized a substantial portion of Plaintiff's medical evidence.
>
> 3. The ALJ failed to articulate a valid basis for rejecting medical opinions.
>
> 4. The ALJ erred at Step 3 by failing to properly consider whether Plaintiff's impairments met or equaled Listings 12.04 or 12.06.
>
> 5. The ALJ erred when assessing Plaintiff's residual functional capacity by determining Plaintiff could engage in frequent interactions with the public and co-workers.

Doc. 9, at 2.

**Evidence**

*Personal and vocational evidence*

Deamer was born in 1973 and was 45 years old on his alleged disability onset date. Tr. 27. He completed a four-year college degree and used to work or volunteer on political campaigns and other similar activities. Tr. 20, 46–47, 205.

*Medical evidence[2]*

In July 2016, two-and-a-half years before his alleged disability onset date, Deamer saw psychologist Richard N. Davis, M.A., for a consultative exam in conjunction with an earlier disability application. Tr. 211, 271–75. Davis stated that Deamer could understand, remember, and carry out instructions. Tr. 274. He could pay attention and concentrate and "did very well on the majority of things that [Davis] asked him to do" during the exam. Tr. 274. Davis didn't assess Deamer's ability to respond to supervision and coworkers; he only noted that Deamer "says that he has always had problems relating satisfactorily to people in positions of authority. He is not totally certain as to the why of this." Tr. 274. Davis remarked that Deamer "didn't seem to be having any difficulties dealing with the stresses and pressures" during the exam, but that Deamer said "that in work settings the stresses and pressures start to mount and his performance deteriorates." Tr. 274.

---

[2]     Because Deamer violated the Court's Initial Order by failing to present medical evidence, *see* Doc. 4, at 3, I rely on the factual background that the Commissioner presented in his brief.

On December 12, 2018, two weeks before his alleged onset date, Deamer had a follow-up visit with advanced practice nurse S. Martin. Tr. 307. Deamer reported that he was doing "ok" and he didn't want to change his medication regimen. Tr. 307. Martin diagnosed Deamer with bipolar disorder and obsessive-compulsive disorder (OCD) and continued his medications (Lithium Carbonate, Seroquel, and Luvox). Tr. 307.

In March 2019, Deamer followed up with Martin. Tr. 306. He said that he was doing "ok." Tr. 306. He asked Martin to decrease his Seroquel dosage, and Martin agreed. Tr. 306.

In July 2019, Deamer told Martin that the decreased Seroquel dosage caused him to have more angry outbursts, so Martin increased the Seroquel dosage to the previous level. Tr. 305.

In February 2020, Deamer began seeing certified nurse practitioner Melissa Mellinger for medication management. Tr. 238, 301–02. Deamer reported that he was doing "ok" and that his mood had been stable. Tr. 301. He was "irritable in conversation" but able to maintain an "appropriate" conversation. Tr. 302. Mellinger continued Deamer's medications, which "continue[d] to be effective." Tr. 302.

In May 2020, Deamer had a telephonic appointment with Mellinger. Tr. 299–300. He reported that his mood "fluctuated but [was] stable." Tr. 299. His medications were effective and he had "no concerns." Tr. 300.

4

In August 2020, Deamer followed up with Mellinger, reported doing well, and said that his medications "continue[d] to work." Tr. 297. He denied increased anxiety or irritability and said that his energy and motivation were within normal limits. Tr. 297–98. Mellinger continued Deamer's medications. Tr. 298.

In November 2020 and January 2021, Deamer told Mellinger that he was doing well, his medications continued to work, and his mood was stable. Tr. 294, 296.

In April 2021, Deamer told Mellinger that his mood was stable and that he had "'no OCD symptoms' at all." Tr. 292–93. He denied irritability and anxiety and said that his energy and motivation were within normal limits. Tr. 293. Mellinger decreased Deamer's Luvox dosage and continued his Lithium Carbonate and Seroquel. Tr. 293.

In June 2021, Deamer told Mellinger that he took a decreased dose of Luvox for two weeks but then increased the dose because he was having bipolar symptoms. Tr. 290. With the decreased dose, he was angrier and not sleeping well. Tr. 290–91. After he increased the Luvox dose, Deamer's mood was stable and he slept better. Tr. 291. Deamer denied anxiety and said that his energy level was within normal limits. Tr. 291. Mellinger kept Deamer's Luvox dosage at the increased level and continued his other medications. Tr. 290–91.

In August 2021, Deamer saw licensed professional counselor Olivia Stone for a follow-up visit. Tr. 287. Deamer said that his OCD tendencies were

5

"acting up with political campaigning." Tr. 287. He said he often felt manic and compulsive "with the [phone] calls" he made while campaigning. Tr. 287. Deamer said that he "struggle[d] with seeing boundaries and when he goes over board until there are problems or complaints." Tr. 287. Stone noted that Deamer had issues with stability, felt manic, and questioned his medications. Tr. 287.

In September 2021, Deamer saw Mellinger, who ordered a new medication, Vraylar, and decreased the Seroquel. Tr. 286. About a week later, Deamer told Stone that he would be starting a new medication soon and hoped that it would help. Tr. 285.

In early November 2021, Deamer told Mellinger that he did not pick up the Vraylar because it was going to cost $1,300 a month. Tr. 281–82. He said that his mood had been "ok" and he wanted to continue his current medications—Lithium Carbonate, the decreased dose of Seroquel, and Luvox. Tr. 282. Deamer denied increased anxiety or irritability and said that his energy and motivation were within normal limits. Tr. 282. Mellinger continued his medications. Tr. 283.

In January 2022, Deamer saw Stone and said that he had "good support from [his] wife"—she was always there for him and they had a "good relationship." Tr. 401. His medications were "stable." Tr. 401.

In February 2022, Deamer told Mellinger that he was happy with his current medications. Tr. 478.

In April 2022, Deamer saw Mellinger and said that he was doing "ok." Tr. 483. His mood hadn't been as stable due to increased stressors—he had to move his 80-year-old parents from a different state and work had been stressful. Tr. 483. He was working for a political campaign as a paid canvasser, the kind of work that he had been doing "off and on for a long time." Tr. 483. Deamer denied increased irritability and said that his energy and motivation had been good. Tr. 483. His medications continued to be effective and he was happy with his current doses. Tr. 483.

In May 2022, Deamer told Stone that his parents had moved to Cleveland and he continued to work on being "supportive" and "helpful" to them. Tr. 409. He said that "now that they are here [he] [was] helping in a lot more ways." Tr. 409.

*State agency opinions*[3]

In November 2021, Paul Tangeman, Ph.D., reviewed Deamer's record and found that Deamer's impairments did not satisfy Listing 12.04, bipolar and related disorders, or Listing 12.06, anxiety and obsessive-compulsive

---

[3]     When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

disorders.[4] Tr. 81. Dr. Tangeman then assessed Deamer's residual functional capacity (RFC).[5] Tr. 82–83. He opined that Deamer could perform work that did not involve strict production quotas and that he could have superficial interaction with the public and coworkers. Tr. 83. Changes would have to be infrequent and clearly explained. Tr. 83.

In January 2022, Karla Delcour, Ph.D., reviewed Deamer's record and agreed with Dr. Tangeman's findings. Tr. 89–91.

*Hearing testimony*[6]

Deamer, who was represented by counsel, testified at the telephonic administrative hearing held in September 2022. When asked how his impairments affected his ability to work, Deamer stated that he had problems

---

[4]     The "listings" are found at 20 C.F.R Part 404, Subpart P, App. 1. They are a catalog of disabling impairments organized by "body systems." Generally, each body system section has an Introduction, which contains information relevant to that system, and a Category of Impairments, which contains each numbered listing. Each listing describes the objective medical and other findings needed to satisfy the criteria of that listing. *Id.*; 20 C.F.R. § 404.1525.

[5]     An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

[6]     Some of Deamer's references in his brief to "facts" from the hearing are not Deamer's testimony, but his attorney's opening statements. *See* Doc. 9, at 2–3; Tr. 43–44. And not all of Deamer's characterizations of the opening statements are accurate. *Compare* Doc. 9, at 2 (referencing Deamer's "multiple medications" and "doctor's appointments," citing Tr. 43), *with* Tr. 43 (no mention of Deamer's medications or doctor appointments). These errors, too, are in violation of the Initial Order. *See* Doc. 4, at 3 ("The *Facts* section of … briefs must accurately recite the record without argument, coloring, or spin.").

with "the interpersonal aspect" of jobs and he had anger. Tr. 60. He experienced outbursts and conflict with authority figures and coworkers. Tr. 60. Little things set him off. Tr. 60.

Deamer described performing a series of short-term jobs involving work on various political and community-based campaigns. Tr. 46–48. He also volunteered on similar projects. Tr. 47. These pursuits involved things like tabling an event, attending mass demonstrations, canvassing door-to-door, and making phone calls. Tr. 47–49. When asked why he only worked short-term jobs, Deamer said that that is the nature of the jobs—"that's how the jobs are conceived … the jobs end at a given time for everybody." Tr. 50, 68–69. His last permanent job was in 2004, working for a publishing company in New York City. Tr. 50. Deamer left this job "partially" because of his mental illness—he "manically decided to quit … and look for some ill-defined thing." Tr. 50. Since then, he's "been unable to find a real job." Tr. 50. Deamer agreed that his work and volunteer activities involved a lot of interaction with the public. Tr. 47. He said that "this also leads to a lot of problems." Tr. 47. He was fired from a campaign job in 2014 because he had an "extreme reaction" to another person's rudeness. Tr. 69–70.

When asked about caring for himself and performing household chores, Deamer said that he does "basic stuff like shower occasionally." Tr 61–62. He is bad at managing the household and chores because he overthinks things and becomes overwhelmed. Tr. 62. Some things become all-consuming. Tr. 62. He

9

used to cook for himself but no longer does—his wife does all the cooking. Tr. 62. Deamer can make himself a simple breakfast like cereal and "bagels or something." Tr. 64.

The ALJ discussed with the vocational expert Deamer's past work as a census worker, election assistant, and real estate clerk. Tr. 74–75. The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work experience as Deamer could perform work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 75. The vocational expert answered that such an individual could not perform Deamer's past work, but could perform the following jobs: laundry worker, dishwasher, and folder. Tr. 75–76. Deamer's attorney asked whether the vocational expert's answer would change if the hypothetical individual could have "little to no interaction with supervision." Tr. 77. The vocational expert explained that the codes in the Dictionary of Occupational Titles for the three jobs he identified "indicates that there are little to almost no interaction with others and very little interaction with supervisors and/or with coworkers." Tr. 77.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2024.
>
> 2.  The claimant has not engaged in substantial gainful activity since December 31, 2018, the alleged

onset date (20 CFR 404.1571 *et seq*.).

3. The claimant had the following severe impairments: depressive, bipolar, and related disorders (bipolar disorder); and anxiety and obsessive-compulsive disorders (obsessive-compulsive disorder) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he cannot work at a production rate pace; frequent interactions with co-workers and the public; and limited to occasional routine workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [i]n … 1973 and was 45 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there

are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2018, through the date of this decision (20 CFR 404.1520(g)).

Tr. 19–28.

### Standard for Disability

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.* "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1152.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

### Discussion

*Deamer's brief is not in compliance with the court's Initial Order*

The Initial Order states, "[a]ny facts recited in support of the *Argument* or *Analysis* section of a brief must also be set forth in the *Facts* section of the brief." Doc. No. 4, at 3–4. Deamer did not set forth any facts from medical records in the *Facts* section of his brief—he only cited portions of testimony at

the hearing. Doc. 9, at 2–3. But in the *Analysis* section of his brief, Deamer cites medical and disability-related evidence in support of his arguments. *Id.* at 7–20. Indeed, one of Deamer's grounds for relief is solely based on a "personal statement" from Deamer's wife, which Deamer first mentions in the *Analysis* portion of his brief. *Id.* at 6–8. Because Deamer has failed to comply with the Court's Initial Order to set forth in the *Facts* section of his brief the evidence that serves as the basis for his arguments, his arguments lack evidentiary support and therefore fail.[7]

Even so, Deamer hasn't shown that he is entitled to a remand.

*The ALJ was not required to articulate her evaluation of a non-medical, third-party statement*

Deamer argues that the ALJ "failed to consider" the third-party statement submitted by his wife, a non-medical source. Doc. 9, at 6. But the ALJ said that she "careful[ly] consider[ed] … all the evidence." Tr. 18. Absent evidence to the contrary, the Court will presume that this statement is true. *See NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 163 (2d Cir. 2021); *see also United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have

---

[7]     This is the second time the Court has advised Deamer's attorney that she failed to comply with the requirements set forth in an order or rule. *See Order*, 3/1/2024 (denying without prejudice the attorney's motion because it didn't contain all of the local rule's requirements governing her request).

properly discharged their official duties."); *cf. Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir. 1988) (noting that the Appeals Council "state[d] that it 'considered the entire record which was before the administrative law judge, including the testimony at the hearing'"). Indeed the ALJ was aware of Deamer's wife's third-party statement, which she cited. *See* Tr. 26.[8]

Instead of not considering Deamer's wife's statement, the ALJ said that she did not "provide articulation about" the third-party statement, Tr. 26, which the regulations permit her to do.[9] *See* 20 C.F.R. § 404.1520c(d) (ALJs "are not required to articulate how [they] considered evidence from nonmedical sources using the [factors] … in this section"); *Rives v. Comm'r of Soc. Sec.*, No. 1:20-cv-2549, 2022 WL 1076216, at *33 (N.D. Ohio Feb. 4, 2022) (under 20 C.F.R § 404.1520c(d), "the ALJ was not required to analyze the third-party statements" of a non-medical source), *report and recommendation adopted*, 2022 WL 681273 (N.D. Ohio Mar. 8, 2022); *Hays v. Comm'r of Soc. Sec.*, No. 1:20-cv-02243, 2021 WL 5863976, at *5 (N.D. Ohio Dec. 10, 2021) ("The ALJ was not required to explain how he considered Plaintiff's husband's report as

---

[8]     Deamer asserts that the ALJ found that the third-party statement was "neither valuable nor persuasive." Doc. 9, at 7. But the ALJ's statement about evidence that was "inherently neither valuable nor persuasive" referenced other evidence. Tr. 26.

[9]     Deamer doesn't appear to appreciate the difference between a requirement to *consider* evidence and a requirement to *articulate* the evaluation of evidence. In his reply, Deamer doubles-down on his assertion that he is only argues that the ALJ failed to *consider* the third-party statement, not that the ALJ failed to *articulate* her consideration. Doc. 13, at 4 n.5.

it came from a non-medical source") (citing 20 C.F.R § 404.1520c(d)); *see also Rodick v. Comm'r of Soc. Sec.*, No. 1:16-cv-2723, 2017 WL 4737286, at *14 (N.D. Ohio Sept. 20, 2017) (an ALJ is not required to discuss every piece of evidence, including third-party statements) (citing Social Security Ruling 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006)), *report and recommendation adopted*, 2017 WL 4682376 (N.D. Ohio Oct. 18, 2017); *Laddy v. Astrue*, No. 4:11-cv-293, 2012 WL 776551, at *14 (N.D. Ohio Feb. 2, 2012), *report and recommendation adopted*, 2012 WL 777137 (N.D. Ohio March 8, 2012).

*The ALJ was not required to discuss all of Deamer's therapy records*

Deamer argues that the ALJ "should [have] consider[ed] all of [therapist] Stone's records—or at a minimum, explain the variations in weight given to other opinions to an extent that 'allows a claimant or subsequent reviewer to follow the adjudicator's reasoning.'" Doc. 9, at 10 (citing *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) and 20 C.F.R. § 404.1527(f)(2)). It is not clear what Deamer is arguing. He hasn't identified an opinion that Stone submitted on Deamer's behalf. So *Cole*, which involved an ALJ's failure to consider a claimant's therapist's opinion, 661 F.3d at 939, and section 404.1527(f)(2), which describes the articulation standard for opinion evidence, are inapposite.[10]

The ALJ recognized that Deamer saw Stone for counseling and

---

[10]    Moreover, 20 C.F.R. § 404.1527 only applies to applications filed before March 2017. Deamer filed his application in September 2021, Tr. 183, so section 404.1527 doesn't apply to his case.

discussed some of the counseling records. *See* Tr. 23 (citing Tr. 285, 287); Tr. 25 (citing Tr. 288, 322, 323, 325, 327, 331–32, 334, 362, 409). The ALJ wasn't required to discuss every counseling note from Deamer's sessions with Stone. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for [her] decision to stand.").

Moreover, when viewed in the context of the entire record—and the ALJ's decision—the evidence that Deamer cites does not show that the ALJ committed an error.[11] For example, Deamer argues that in June 2019, he told Stone that he was punched after a verbal altercation while working a campaign job, Doc. 9, at 12 (citing Tr. 347), and that in July 2019, he told Stone that his anger had increased, Doc. 9, at 11 (citing Tr. 333). But, as the ALJ noted, in March 2019, Deamer's Seroquel dosage was decreased at Deamer's request; at the end of July 2019 Deamer told Martin that the decreased dose "caused an increase in anger outbursts"; and Martin then upped the Seroquel dosage again. Tr. 22, 305, 306. The ALJ commented that at follow-up visits, Deamer said that his mood was stable and that his medications were effective. Tr. 22–23. So Deamer's increased anger in June and July 2019 are explained by his

---

[11]    The Initial Order requires parties to "fully and fairly present all relevant evidence, both favorable and unfavorable, in the record." Doc. 4, at 3–4. This is so that the parties present their facts in context. Because Deamer didn't present relevant evidence in the *Facts* section of his brief in violation of the Initial Order, there is no context for the evidence he cites in the *Arguments* section of his brief. *See, e.g.*, Doc. 9, at 11–12 (Deamer citing portions of Stone's treatment notes without context and out of chronological order).

medication changes, which Deamer ignores. These records are also consistent with the ALJ's finding that Deamer's symptoms were effectively treated with medication, Tr. 24, and that Deamer's "social interaction problems are isolated to his 'volunteer activism' or his campaign working attempts," Tr. 25.

Deamer argues that the ALJ's finding that Deamer's social problems were isolated to his volunteering or working on campaigns was a mischaracterization. Doc. 9, at 8, 14. The ALJ explained her conclusion on this issue:

> The claimant testified that he has problems with interpersonal interactions and anger; he has outbursts, is combative, and little things set him off; and he has conflicts with authority figures and coworkers. However, it appears that his social interaction problems are isolated to his "volunteer activism" or his campaign working attempts as opposed to having social interaction problems with people in general. For example, on March 24, 2020, the claimant told his counselor at the CEL that he had some realization that his campaigning volunteering might be triggering his mental health issues—"I think that all the stress from these debates/arguing with has triggered, mania, aggression, and irritability." The claimant further stated that the "stay at home" order due to COVID-19 was making him "lonely" since he was doing less campaigning, but it was "honestly more relieving because I am arguing with people less" (3F/52-53). In April 2019, the claimant had told his counselor that he was quitting his campaigning position due to the stress including the stress of dealing with people and because the quota was so hard to meet (21F). In October 2020, the claimant reported that he was very frustrated and overwhelmed with the election. He stated that he felt at times that his mental illness became a little exacerbated with all the drama. He said, "I have had a lot of conflict around election and

> campaigning so I think it's a very emotional time for me and for everyone." However, he wanted to avoid any problems so "I need my meds and to be safe" (3F/46). In December 2020, the claimant reported that his use of social media had changed. He was no longer on Facebook, removing himself from the "toxicity" and he had felt much more stable since then (3F/44). The evidence shows the claimant also has had some relationship struggles with his parents (3F/43, 48, 55), which seemed improved as of July 2021 when the claimant was helping them to move (3F/9). In May 2022, the claimant reported that his parents had moved to Cleveland last month and he continued to be "supportive" and "helpful" to his parents (47F/22). From all of this, I find the claimant's social interaction problems are isolated to his "volunteer activism" or his campaign working attempts as opposed to having social interaction problems with people in general.

Tr. 25.

Deamer argues that his wife, in her third-party statement, "refute[d]" the ALJ's finding "and provide[d] multiple other incidents that occurred in situations outside of [Deamer's] 'volunteer activism.'" Doc. 9, at 8. He cites some of these examples: Deamer "scream[ed] at [an] elderly man with a walker" in a parking lot when Deamer parked too close to the man; when training for a marathon and running on the sidewalk, Deamer became furious upon encountering bikes that children left in his path; and that friends refused to come to the Deamers' house for fear that Deamer would start fights. Doc. 9, at 7 (citing Tr. 253–54). But Deamer's wife didn't provide dates for these incidents. In fact, she said that the parking lot and sidewalk incidents occurred "[p]rior to [Deamer's] official diagnosis" and treatment with medication. Tr.

253. She wrote that, [p]rior to his medication," Deamer would hyper-fixate on things that also "hinder[ed] his ability to interact with others." Tr. 253. But the ALJ explained that Deamer's symptoms improved with medications. Tr. 24, 26. So Deamer's wife's statements about Deamer's behavior before he began treatment doesn't show that the ALJ's finding was erroneous.

As for the comment about friends not wanting to visit the Deamers' home, Deamer's wife didn't identify a time-frame for this problem. This omission persists throughout her statement.[12] The only date she references is 2021, when Deamer was punched "by a homeowner … while canvassing for a political campaign." Tr. 254. She also says that Deamer was arrested in front of a public library "trying to collect signatures for a political campaign." Tr. 254. The record shows that this occurred in 2016, before Deamer started treatment and medications. *See* Tr. 272 (Davis's July 2016 exam stating that Deamer "just started … treatment" and that in January 2016, Deamer said that he was arrested while handing out flyers by a library). In sum, Deamer's wife's third-party statement discussing Deamer's behavior at unspecified times[13] doesn't show that the ALJ's conclusion—that Deamer's social

---

[12]    The first page of Deamer's wife's statement describes Deamer's behavior before his diagnosis, "[o]nce [he] got diagnosed with bipolar disorder and started taking medication," "post-diagnosis and while on his medication," and then back to a time-period "[p]rior to his medication." Tr. 253. Notably, Deamer's wife didn't say that Deamer had difficulty getting along with others when she described his behavior while he was taking medication. Tr. 253.

[13]    The Court can't rely on Deamer's wife's use of the present and past tenses because she uses the present tense while discussing Deamer's past

interaction problems are isolated to Deamer's "'volunteer activism' or his campaign working attempts," Tr. 25—is unsupported by substantial evidence. Nor does Deamer's report to Davis that, in the past, he had trouble getting along with teachers and people in positions of authority. Doc. 9, at 14 (citing Tr. 272).

Finally, Deamer cites other records but doesn't explain how these records—or the ALJ's failure to cite them—shows that the ALJ committed an error. He states that in January 2019, he reported to Stone that it was "'the worst [grief] [he] … felt in sometime' after his dog passed away." Doc. 9, at 11 (citing Tr. 358). Deamer fails to articulate what about this treatment note shows that the ALJ's decision was unsupported by substantial evidence. He complains that the ALJ "fails to mention that … Mellinger merely writes [Deamer's] prescriptions," Doc. 9, at 10, but the ALJ recognized that Deamer saw Martin and Mellinger for medication management visits, Tr. 22–25.

Deamer says that on February 1, 2022, he told Mellinger that he was "happy" with his current medications, as the ALJ noted. Doc. 9, at 11; Tr. 24. He speculates that this was because he was in hypomanic phase. Doc. 9, at 11 (citing Tr. 480). But Deamer reported to Mellinger on February 1 that he had a lack of energy, Tr. 478, so Deamer's speculation is not borne out by the record. In any event, the ALJ accurately stated that Deamer reported being happy

---

behavior. *See, e.g.*, Tr. 253 (discussing in the present tense Deamer's behavior before he was diagnosed and treated).

with his medications in February and April 2022. Tr. 25, 478, 483. The ALJ also recounted that Deamer regularly reported to Martin or Mellinger that he was "doing 'ok'" or "well," his medications were effective, and he wanted to continue his then-current medication and dosages. Tr. 22, 23.

Deamer complains that the ALJ didn't cite a treatment note with Stone from March 2022, which showed that Deamer reported that he was struggling with his campaigning job and was "frustrated with his mania and bipolar issues." Doc. 9, at 11 (citing Tr. 481). But the ALJ commented that in April 2022, Deamer told Mellinger that "his mood had not been as stable due to increased stressors." Tr. 24. So the ALJ recognized that Deamer was having increased symptoms in Spring 2022. The ALJ also noted that at that time, Deamer denied increased irritability and said that his medications continued to be effective and that he was happy with his current doses. Tr. 24.

Finally, Deamer argues that the ALJ mischaracterized the evidence when she wrote about Deamer's relationship with his parents. Doc. 9, at 12–13. The ALJ wrote that Deamer had "some relationship struggles with his parents, which seemed improved as of July 2021" and that in May 2022 Deamer "reported that his parents had moved to Cleveland last month and he continued to be 'supportive' and 'helpful' to his parents." Tr. 25 (record citations omitted). Deamer argues that "the record proves otherwise" because of two treatment notes from December 2021 and January 2022. Doc. 9, at 12–13. Deamer doesn't provide citations for these treatment notes, so I don't consider

this argument. *See* Doc. 4, at 4 (Court's Initial Order stating that "[a]ny factual allegation or argument that relies on the record but that is not supported by a specific citation to the record will not be considered by the Court."). In any event, Deamer hasn't shown that the ALJ's citations to the record fail to support the findings that the ALJ made. So he hasn't shown that the ALJ "mischaracterized" Deamer's relationship with his parents.

Although he doesn't expressly say so, what Deamer is essentially arguing is that the ALJ cherry-picked the evidence. It's true that an ALJ may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723–24 (6th Cir. 2014). But the fact that an ALJ fails to mention certain evidence doesn't mean that she was cherry-picking evidence. All told, Deamer hasn't shown that the ALJ's decision lacks substantial evidentiary support. *See, e.g., Byler v. Kijakazi*, No. 5:20-cv-1822, 2022 WL 980099, at *9 (N.D. Ohio Jan. 21, 2022) ("Although Plaintiff understandably disagrees with the ALJ's decision, the law does not require the ALJ to discuss every piece of evidence that is supportive or inconsistent with the RFC. And … the ALJ cannot be expected to discuss every piece of evidence that Plaintiff believes is inconsistent with the RFC."), *report and recommendation adopted sub nom. Byler v. Comm'r of Soc. Sec. Admin.*, 2022 WL 971384 (N.D. Ohio Mar. 31, 2022); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) ("we must defer to an agency's decision 'even if there is substantial evidence in

the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.'").

*The ALJ's failure to evaluate Davis's opinion is harmless*

The ALJ stated that she "did not provide articulation about Mr. Davis's medical opinion because it was rendered in July 2016 [in connection with a prior disability application] and the claimant's current alleged onset date is December 31, 2018." Tr. 26. Deamer argues that this was error because the ALJ "failed to articulate a valid basis for rejecting" Davis's opinion. Doc. 9, at 13.

The Commissioner argues that the ALJ wasn't required to articulate her consideration of Davis's opinion because the opinion pre-dated the alleged onset date by over two years. Doc. 12, at 19–20. And even if the ALJ was required to articulate her evaluation, the Commissioner asserts, any error would be harmless. *Id.* at 20.

The regulations[14] state that the Agency "will articulate … how persuasive we find all of the medical opinions … in your case record." 20 C.F.R. § 404.1520c(b); *see also Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 905 (E.D. Mich. 2021) (under the updated regulations, an ALJ must articulate the persuasiveness of each medical opinion) (citing 20 C.F.R. § 404.1520c(b)). So

---

[14]     New regulations governing opinion evidence came into effect for applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The old regulations generally required the ALJ to defer to the opinions of treating physicians, 20 C.F.R. § 404.1527(c)(2), whereas the new regulations do not, 20 C.F.R. § 404.1520c.

the ALJ's failure to articulate her consideration of Davis's opinion ran afoul of the regulation's plain language.

The Commissioner says that the ALJ wasn't required to discuss a medical opinion that pre-dates the alleged disability onset date. Doc. 12, at 20 (citing *Cisan v. Saul*, No. 1:19-cv-1358, 2020 WL 4734722, at *7 (N.D. Ohio Aug. 14, 2020) ("District courts in this circuit have repeatedly held that an ALJ does not err in failing to assign weight or analyze a medical source's opinion that pre-dates the alleged onset date")). But *Cisan* was governed by the former regulations, 2020 WL 4734722, at *4, which didn't expressly require an ALJ to evaluate all of the medical opinions in a case file, *see* 20 C.F.R. 404.1527. The current regulations do. 20 C.F.R. § 404.1520c(b); *Hardy*, 554 F. Supp. 3d at 905. The Commissioner hasn't explained why the reasoning in *Cisan* would apply in this case, which is governed by the new regulations.[15]

Even though the ALJ erred by failing to articulate her consideration of Davis's opinion, any error is harmless. An ALJ's violation of procedural rules "will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004) (citation and emphasis omitted). An ALJ's error evaluating

---

[15]    Deamer also cites a case that applied the old regulations. Doc. 9, at 13 (citing *McCombs v. Comm'r of Soc. Sec.*, No. 209-cv-332, 2010 WL 3860574, at *7 (S.D. Ohio Sept. 24, 2010)). So neither party has addressed this issue head-on.

opinion evidence may be harmless in one of three circumstances: (1) the opinion was "so patently deficient that the Commissioner could not possibly credit it"; (2) the ALJ's RFC findings were consistent with the opinion; or (3) the ALJ "otherwise met the goals of the regulations by indirectly attacking the supportability or consistency of the opinion." *Bates v. Comm'r of Soc. Sec.*, No. 3:21-cv-1055, 2022 WL 2610519, at *8 (N.D. Ohio May 27, 2022) (citing *Wilson*, 378 F.3d at 547, and *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010)), *report and recommendation adopted*, 2022 WL 2916871 (N.D. Ohio July 25, 2022).[16]

The Commissioner argues that any error was harmless because Davis did not access specific functional limitations. Doc. 12, at 21. This goes to the *patently deficient* circumstance. A "medical opinion" is defined as "a statement from a medical source about what [claimants] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related

---

[16]     *Bates* explains that the harmless error analysis described by the Sixth Circuit applied to the pre-March 27, 2017 regulations for treating source opinions, but that district courts within this Circuit have applied the analysis to the post-March 27, 2017 regulations covering opinion evidence. 2022 WL 2610519, at *8 (citing *Hickman v. Comm'r of Soc. Sec.*, No. 2:20-cv-6030, 2021 WL 5176523, at *5 n.4 (S.D. Ohio Nov. 8, 2021), *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119, 2021 WL 3056108, at *11 n.8 (W.D. Tenn. July 20, 2021), and *Burba v. Comm'r of Soc. Sec.*, No. 1:19-cv-905, 2020 WL 5792621, at *4 (N.D. Ohio Sept. 29, 2020)). Deamer hasn't argued that the harmless error doctrine is inapplicable to the ALJ's treatment of Davis's opinion. *Cf. Frazier v. Soc. Sec. Admin.*, No. 1:22-cv-43, 2024 WL 995977, at *16 (M.D. Tenn. Feb. 5, 2024) (applying harmless error to the ALJ's rejection of a medical opinion that predated the alleged disability onset date), *report and recommendation adopted*, 2024 WL 993264 (M.D. Tenn. Mar. 7, 2024)).

limitations or restrictions" in their ability to perform the physical, mental, or other demands or work. 20 C.F.R. § 404.1513(a)(2). Here, Davis did not assess impairment-related limitations. The "functional assessment" portion of his consultative-exam report says that Deamer could understand, remember, and carry out instructions and pay attention and concentrate. Tr. 274. These comments do not describe limitations—they note the absence of limitations. To the extent that they could be construed as limitations, they are less restrictive than the ALJ's RFC. Tr. 21 (ALJ limiting Deamer to no production-rate-pace work). So any error would be harmless for this additional reason. *See Roberts v. Comm'r of Soc. Sec.*, No. 3:22-cv-51, 2023 WL 4243225, at *17 (N.D. Ohio Jan. 23, 2023) (finding that any failure by the ALJ to comply with the regulations for articulating opinion evidence was harmless because the ALJ adopted a more restrictive RFC than the doctor recommended) (collecting cases).

And Davis didn't assess Deamer's ability to respond to supervision, coworkers, or work pressure. Tr. 274. Rather, he only recited what Deamer told him. Tr. 274. Davis wrote that Deamer "says that he has always had problems relating satisfactorily to people in positions of authority." Tr. 274. Davis remarked that Deamer "didn't seem to be having any difficulties dealing with the stresses and pressures" during the exam, but that Deamer "sa[id] that in work settings the stresses and pressures start to mount and his performance deteriorates." Tr. 274. These comments do not constitute a medical opinion.

*See Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (finding that the doctor's statement wasn't a "'medical opinion' at all—it merely regurgitates Francis's self-described symptoms"); *Harden v. Comm'r of Soc. Sec.*, No. 16-12394, 2017 WL 4946580, at *8 (E.D. Mich. Aug. 24, 2017) ("The medical source statement's mere parroting of plaintiff's reported symptoms and complaints (as dictated by plaintiff the very day the statement was completed) oppugns its status as an actual medical opinion under the regulatory definition"). Indeed, the state agency reviewers agreed that Davis "did not opine limitations but does not[e] [claimant] reports problems dealing with others and pressures." Tr. 82, 90.

Finally, Deamer doesn't even rely on the portion of Davis's opinion in which Davis purported to provide a functional assessment. Doc. 9, at 14 (citing 272–73). He only cites comments that Deamer said to Davis, *id.*, which are not "opinions" that the ALJ was required to evaluate, *see Francis*, 414 F. App'x at 804. Deamer hasn't shown that the ALJ's failure to evaluate Davis's report was harmful error, requiring reversal.

*Deamer's step three arguments fail*

Deamer argues that the ALJ failed to properly consider whether Deamer satisfied Listings 12.04 and 12.06. Doc. 9, at 15.

At step three of the disability evaluation process, a claimant will be found disabled if his or her impairments meet or equal one of the listings in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). The claimant bears

the burden of establishing that any condition meets or equals a listing. *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727–28 (6th Cir. 2004) (citing *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987)). A claimant "must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Id.* at 728 (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)). "Each listing specifies the objective medical and other findings needed to satisfy the criteria of that listing" and a claimant "must satisfy all the criteria to 'meet' the listing." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). "[A] claimant is also disabled if her impairment is the *medical equivalent* of a listing[.]" *Id.* There is no heightened articulation standard at step three. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006).

Listings 12.04 and 12.06 contain three paragraphs—A, B, and C. To satisfy either listing, a claimant must satisfy the requirements in paragraphs A and B or paragraphs A and C. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00A2. To satisfy the paragraph B criteria, the claimant must have an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself. *Id.* at 12.00A2b.

30

As an initial matter, the ALJ stated that her step three findings were consistent with the state agency reviewers' opinions, which she found persuasive. Tr. 20. The reviewers' opinions are substantial evidence to support the ALJ's step three findings. *See, e.g., Techau v. Kijakazi*, No. 5:20-cv-508, 2021 WL 4291289, at *14 (N.D. Ohio Sept. 21, 2021) ("the ALJ's determination—that the B and C criteria of the identified Listings were not satisfied—is supported by substantial evidence in the form of the two State Agency psychologists' opinions").

The ALJ found that Deamer had a "mild" limitation in understanding, remembering, and applying information. Tr. 20. Deamer argues that this was "incorrect." Doc. 9, at 16. He submits that the state agency reviewers "determined [Deamer] cannot work anywhere without detailed, simple instructions—demonstrating difficulty in these areas of functioning." *Id.* (citing Tr. 83, 91). First, the state agency reviewers didn't find what Deamer says they found. *See* Tr. 82–83, 90–91. Next, Deamer cites the reviewers' RFC findings, not their step three, paragraph B findings. Doc. 9, at 16 (citing Tr. 83, 91). Step three findings are not an RFC assessment. *See* Soc. Sec. Ruling 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process). The state agency reviewers opined that Deamer had a "mild" limitation in

understanding, remembering, and applying information, Tr. 81, 89, which is what the ALJ found, Tr. 20.

Deamer argues that the "ALJ's claim that [Deamer] has sufficient reasoning and judgment capabilities is inherently false." Doc. 9, at 16. He argues that his "judgment and reasoning has led to physical and verbal altercations over mere inconveniences." *Id*. But the ALJ didn't find that Deamer had "sufficient reasoning and judgment" without qualification. Rather, the ALJ found that Deamer had sufficient "reasoning and judgment capabilities … for caring for himself and participating in treatment." Tr. 20. Deamer doesn't show how this statement is "inherently false."

Next, Deamer challenges the ALJ finding that he is moderately limited in his ability to interact with others. Doc. 9, at 17. In support of this finding, the ALJ explained that Deamer has a "good" relationship with his wife, whom he has been married to for 15 years, and that Deamer has a best friend. Tr. 20 (citing Tr. 401, 475). The ALJ also commented that Deamer attends appointments without incident and that his social interaction problems are limited to his volunteer activism and campaign work. Tr. at 20. Deamer contends that his "marriage has involved infidelity, and his wife would not describe it as 'good'" and submits that his friend lives in another state and that Deamer only speaks on the phone with him every few weeks. Doc. 9, at 17. The records that Deamer cites, *id*. (citing Tr. 272, 428, 475) don't support his

statements characterizing them.[17] None of these records mentions descriptions of Deamer's marriage or infrequent phone calls with an out-of-state friend.[18] *See also* Doc. 9, at 17 (citing Tr. 347). So I don't consider his arguments. *See* Doc. 4, at 4 (the Court's Initial Order explaining that "if the portion of the record cited to support a factual allegation or argument does not support the allegation or argument, the allegation or argument will not be considered by the Court."). Deamer's additional references to his wife's third-party statement are insufficient to support his argument for the reasons explained above—the comments either have no time-frame or a time-frame preceding Deamer's treatment.

Deamer disagrees with the ALJ's conclusion that he has "moderate" limitations in concentrating, persisting, or maintaining pace, Doc. 9, at 18, Tr. 20–21, but he hasn't shown that the ALJ's finding was erroneous. As for the ALJ's finding that Deamer has "moderate" limitations adapting or managing himself, Deamer disagrees with the ALJ's finding that "the medical evidence of record clearly shows that [Deamer's] psychiatric medications adequately control his anger/irritability." Doc. 9, at 18, Tr. 21. He says that "this statement is simply incorrect—if anything, the medical evidence shows the opposite."

---

[17]     The Commissioner points out that in his November 2021 function report, Deamer said that he "meet friends for drinks every few weeks." Doc. 12, at 7, 12 (citing Tr. 220).

[18]     In one of the records he cites, Deamer reported that he and his wife "have friends and a semi-active social life." Tr. 272.

Doc. 9, at 18. But he doesn't explain what evidence shows *the opposite* of the ALJ's finding. As explained above, the ALJ's findings that Deamer's anger and irritability are controlled by medications and isolated to Deamer's campaign and volunteer activism are supported by substantial evidence.

Finally, Deamer contends that the ALJ's finding that he didn't satisfy the paragraph C criteria is "incorrect." Doc. 9, at 19. The paragraph C criteria is the same for Listings 12.04 and 12.06. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00A2c, 12.00G. To satisfy the paragraph C criteria, the evidence must show that the claimant relies, "on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support[s], or highly structured settings to diminish the symptoms and signs of [the claimant's] mental disorder." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00G2b. And the evidence must show that, "despite … diminished symptoms and signs, [a claimant] has achieved only marginal adjustment." *Id*. at 12.00G2c.

> "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of

> deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

*Id.* The ALJ explained that Deamer "has not had a 'serious and persistent' mental disorder over a period of at least two years with only 'marginal' adjustment despite treatment, therapy, support, or a highly structured setting." Tr. 21.

Deamer argues that he "has demonstrated minimal capacity to adapt to changes" because the ALJ found he was unable to perform his past work and the state agency reviewers found that he was moderately limited in his ability to respond to workplace changes. Doc. 9, at 20. Deamer's ability to perform his past work is not disabling—the ALJ found that there was other work he could perform. Tr. 26–28. Moderate limitations responding to workplace changes is not disabling, either—the ALJ's RFC limited Deamer to only occasional workplace changes, Tr. 21, and she found that he could perform work with these limitations, Tr. 27–28. Deamer's professed "preference" for routines and predictability and issues he had before he started treatment, Doc. 9, at 20, doesn't show that the ALJ's paragraph C criteria finding was "false" or "incorrect," as Deamer alleges, *id.* at 19. In short, Deamer doesn't show that the ALJ erred, or that he satisfies the paragraph B or C criteria. *See Thacker*, 93 F. App'x at 727–28 (the claimant bears the burden of establishing that any condition meets or equals a listing). So his step three challenge fails.

*The ALJ's RFC is supported by substantial evidence*

Deamer argues that the ALJ erred when she assessed an RFC limiting Deamer to frequent interactions with the public and co-workers. Doc. 9, at 20. He focuses on this passage in the ALJ's decision:

> Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the treatment records discussed above and … some of psychological consultants' medical findings at Exhibits 1A and 3A, all of which suggest greater sustained capacity than described by the claimant. The claimant's subjective complaints and alleged limitations are not fully persuasive and he retains the capacity to perform work activities with the limitations set forth above.

Tr. 26. Deamer claims that the ALJ "fail[ed] to provide any explanation as to why [Deamer] was not fully persuasive." Doc. 9, at 22. But he ignores the ALJ's evaluation of his allegations about the severity of his symptoms, which encompasses almost an entire page of the ALJ's decision. Tr. 24–25. He complains that the ALJ's RFC is "different" from the state agency reviewers' opinions. Doc. 9, at 22. But the ALJ explained why her RFC assessment departed from the state agency reviewers' opinions, Tr. 26, which Deamer also ignores. Deamer hasn't shown that the ALJ erred or that her decision lacks substantial evidentiary support, *see Jordan*, 548 F.3d at 422, so the ALJ's decision is affirmed.

**Conclusion**

For the reasons explained above, the Commissioner's decision is affirmed.

Dated: May 23, 2024

_/s/ James E. Grimes Jr._

James E. Grimes Jr.
U.S. Magistrate Judge
